IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NANOCHEM SOLUTIONS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 10 C 5686 |
| | ) |
| GLOBAL GREEN PRODUCTS, LLC, | ) |
| and LARRY P. KOSKAN, | ) |
| | ) |
| Defendants, | ) |
| | ) |
| GLOBAL GREEN PRODUCTS, LLC, | ) |
| | ) |
| Counter Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NANOCHEM SOLUTIONS, INC., | ) |
| | ) |
| Counter Defendant. | ) |

# OPINION AND ORDER

Plaintiff NanoChem Solutions, Inc ("NC") brings this action against defendants Global Green Products, LLC ("GGP") and Larry P. Koskan for patent infringement arising under 35 U.S.C. § 271 (Counts I through V), unfair

competition under the Lanham Act, 15 U.S.C. § 1125(a) (Count VI), and unfair competition under Illinois law (Count VII).[1] Presently pending are cross motions for summary judgment as to Counts VI and VII. Also pending is defendants' motion *in limine* to bar evidence of damages. Discovery has been completed and closed. Defendants' motion for partial summary judgment as to certain patent claims was previously denied. *See* ***Nanochem Solutions, Inc. v. Global Green Prods., LLC***, 2012 WL 5048064 (N.D. Ill. Oct. 16, 2012). A claim construction ruling has also been issued. *See* ***Nanochem Solutions, Inc. v. Global Green Prods., LLC***, 2013 WL 393302 (N.D. Ill. Jan. 29, 2013).

The motion *in limine* will be addressed first. Defendants contend that plaintiff has not adequately disclosed and supplemented his damages calculation as to any claim. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii) ("a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each

---

[1] Claims against defendant Lebond Chemicals, LLC (Counts VIII through XII) were previously dismissed, Lebond having never been served. *See* ***Nanochem Solutions, Inc. v. Global Green Prods., LLC***, 2013 WL 393302 *1, 3 (N.D. Ill. Jan. 29, 2013).

computation is based, including materials bearing on the nature and extent of injuries suffered"). In response to defendants' motion *in limine*, plaintiff has for the first time expressly disclosed a calculation of damages, one based solely on lost profits. Defendants contend this disclosure comes too late and without adequate supporting documentation and also that it is based on a legally deficient method of calculating lost profits.

Plaintiff contends the information necessary to make the calculation was previously disclosed in discovery. However, plaintiff did not previously put the information into a calculation. Plaintiff had provided a calculation of its profit margins and separately defendants had disclosed GGP's total sales. Plaintiff did not previously state that damages would be presented by multiplying the profit margin percentage for a six-year period times GGP's total gross sales with the result representing damages based on lost profits. Plaintiff now makes that express representation in its response to the motion *in limine*, resulting in claimed lost profits of $425,000. Previously, plaintiff had represented that an expert would calculate the amount of GGP's gross sales, determine how much sales plaintiff lost based on GGP's sales, and perform any necessary calculations. Plaintiff now clarifies that it will rely on GGP's gross sales without any adjustment to determine

the amount of sales plaintiff lost. To the extent statutory provisions apply, plaintiff also seeks treble damages and attorney fees.

Previously, plaintiff had represented it would also seek patent damages based on a reasonable royalty, but is now relying only on lost profits. Plaintiff has now disclosed its damages calculation and that calculation is limited to lost profits. Plaintiff will be limited to seeking damages consistent with that disclosure. Even if there was a violation of Rule 26(a) and 26(e)(1)(A) because the supplemental disclosure was not timely, the calculation will not be excluded if any delay was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1); **Smith v. Ill. Ass'n of Sch. Bd.**, 2012 WL 895426 *2 (S.D. Ill. March 15, 2012); **Compak Cos., LLC v. Johnson**, 2011 WL 1654269 *17 (N.D. Ill. April 28, 2011).

Defendants were not prejudiced. A date has not been set for submission of a final pretrial order. The evidence that supports the information was previously disclosed and defendants had the opportunity to see the supporting documents and depose related witnesses. Defendants contend they had been waiting to depose the expert that plaintiff had repeatedly claimed it would use to support its damages calculation. No expert will be called. But even if plaintiff had chosen to use an expert, the underlying evidence of plaintiff's profits and

- 5 -

profit margins is distinct from the expert's analysis of such evidence. If plaintiff's disclosure of records was deficient or questioning of the supporting Rule 30(b)(6) deponent had been improperly blocked, defendants could have brought a motion to compel additional disclosures or deposition answers. Defendants should have done that by the time discovery closed. Untimely disclosure of the damages calculation is not a basis for barring the damages calculation nor related proof. *Cf.* ***Capuano v. Consol. Graphics, Inc.***, 2007 WL 2688421 *2-3 (N.D. Ill. Sept. 7, 2007). In proving its damages at trial, though, plaintiff will not be permitted to rely on any documents it failed to disclose during discovery. Also, as to issues on which plaintiff interfered with deposition answers of its witness, plaintiff will not be permitted to elicit favorable testimony from such a witness that goes beyond testimony at the deposition.

Defendants' other contention is that the underlying proof is deficient and plaintiff's formula (plaintiff's profit margin times GGP's gross sales) is not a legally proper method of determining damages based on lost profits. That is an issue distinct from whether plaintiff failed to disclose its damages calculation. Even if plaintiff should have made additional modifications to its lost profits calculation, it is not necessarily precluded from applying the proper methodology

to the evidence that has been disclosed. *Cf. Smith*, 2012 WL 895426 at *4-5. *Compare also ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298-300 (3d Cir. 2012), *cert. denied*, 133 S. Ct. 2025 (2013) (district court abused its discretion in not permitting plaintiff to amend its damages calculation to apply an appropriate damages methodology). At this point, the appropriate legal standard for lost profits can be raised in the final pretrial order, in proposed jury instructions, and in trial briefs. Any claimed factual deficiency in proving damages at trial that goes beyond modifying appropriate jury instructions can be raised in a Rule 50 motion for judgment as a matter of law.

_____

Also to be considered are the motions for summary judgment. Counts VI and VII are based on claims of false designation of origin and false description in violation of the Lanham Act (15 U.S.C. § 1125(a)) and Illinois unfair competition law.[2] The parties agree that, as to at least some of GGP's polyaspartate products sold from 2010 through 2012, GGP purchased plaintiff's polyaspartate product

---

[2]The parties agree that the substantive law applicable to the Count VII state law claim is the same as that applicable to the Count VI Lanham Act claim. Like the parties' briefs, the discussion in today's opinion will be limited to the Lanham Act.

called A-5D from a GGP customer and resold it as GGP 124, GGP 786, and/or LARIN 1447. Plaintiff contends that such sales are *per se* reverse passing off violations of the Lanham Act. Defendants contend it is not a violation unless A-5D is a distinctive mark or has secondary meaning. Moreover, defendants contend that A-5D is descriptive and that plaintiff had knowledge of GGP's purchases from another NC customer and resale to a GGP customer. The parties agree that A-5D is not a registered trademark. There is no evidence that plaintiff ever used a trademark symbol with A5-D as it did with other chemicals it sold. Defendants also contend plaintiff's Lanham Act claim fails because plaintiff cannot show commercial injury.

      Plaintiff contends a Lanham Act claim is shown even if A-5D is not a distinctive mark because of long use and, alternatively, that A-5D is a distinctive mark. Accordingly, it contends it need not show secondary meaning or commercial injury. The parties also have disagreements regarding what the evidence shows regarding certain of GGP's compounding of A-5D. It is unnecessary to determine whether either side's factual contentions regarding GGP's conduct are supported by undisputed facts or instead involve genuine factual disputes that must be resolved differently for each side's summary

judgment motion.  In order to succeed on its reverse passing off contentions, plaintiff must show that A-5D is a distinctive mark or has secondary meaning.  Undisputed facts support that neither is true.

In ***Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.***, 419 F.3d 576, 579-80 (7th Cir. 2005), the Seventh Circuit held that the Lanham Act reverse passing off claims in that case required proof of inherent distinctiveness or secondary meaning.  Plaintiff attempts to distinguish ***Bretford*** on the ground that it involves trade dress, not a trademark.  However, the discussion in ***Bretford*** is not limited to trade dress.  A later Seventh Circuit case involving reverse confusion supports that the distinctiveness requirement applies for reverse passing off trademark claims as well.  *See* ***Custom Vehicles, Inc. v. Forest River, Inc.***, 476 F.3d 483-85 (7th Cir. 2007); *see also* ***Peaceable Planet, Inc. v. Ty, Inc.***, 362 F.3d 986 (7th Cir. 2004).  At least one district court case from another circuit has held in the alternative that the distinctiveness requirement applies to reverse passing off trademark claims.  *See* ***Impreglon, Inc. v. Newco Enterprises, Inc.***, 508 F. Supp. 2d 1222, 1241 n.18 (N.D. Ga. 2007).

Plaintiff also cites ***Web Printing Controls Co., Inc. v. Oxy-Dry Corp.***, 906 F.2d 1202 (7th Cir. 1990).  While not listing distinctiveness as an element of a

reverse passing off claim, this case also does not expressly address that issue. Unlike the present case, *Web Printing* involved a registered trademark that had been used for years, *see id.* at 1203, which is presumed to be distinctive or to have secondary meaning. See *Custom Vehicles*, *supra*; *Timelines, Inc. v. Facebook, Inc.*, 2013 WL 1340598 *9 (N.D. Ill. April 1, 2013).

The Second Circuit has held that distinctiveness is not required for reverse passing off. *Societe Des Hotels Meridien v. LaSalle Hotel Operating P'ship, L.P.*, 380 F.3d 126, 132 (2d Cir. 2004). No subsequent reverse passing off case has followed this holding in *Meridien*. Like *Bretford*, *Impreglon* relies on *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), and *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205 (2000). *Impreglon* favorably cites *Bretford* and declines to follow *Meridien*. *See also* 4 *Callman on Unfair Competition* § 22:31 n.35 (4th ed.) (criticizing *Meridien*).

Secondary sources support that distinctiveness or secondary meaning is required for trademark reverse passing off claims. *Callman*, § 22:31; John G. Mills, Donald Cress Reiley III, Robert Clare Highley, & Peter D. Rosenberg, 1 *Pat. Law Fundamentals* § 5:57 (2d ed.); Malla Pollack, *Reclassifying Reverse Passing off as Failure to Contract or as False Advertising*, 17 B.U.J. Sci. &

Tech. L. 40, 66-67 (2011). Plaintiff must show distinctiveness or secondary meaning to succeed on Counts VI and VII.

Plaintiff does not contend that A-5D has secondary meaning. Its only contention on this issue is that A-5D is presumptively distinctive because it has been continuously used for more than five years with millions of dollars in sales. The only legal support cited for this contention is 15 U.S.C. 1052(f). No supporting case law is cited by plaintiff. Citing §1052(f), case law supports that proof of substantially exclusive and continuous use of a mark for five years "has some bearing on the issue of secondary meaning." ***Thomas & Betts Corp. v. Panduit Corp.***, 138 F.3d 277, 295-96 (7th Cir. 1998). But that is just a factor to consider, ***id.***, length of use alone does not establish secondary meaning. ***Minemyer v. B-Roc Representatives, Inc.***, 678 F. Supp. 2d 691, 706 (N.D. Ill. 2009).

In its own motion, plaintiff made no assertion regarding how long it has sold a polyaspartate product called A-5D. In their fact statement, however, defendants establish (and plaintiff does not dispute) that the A-5D product has

been sold since the 1990's.³ The amount of sales of A-5D is not established. There is no evidence of substantially exclusive use of the mark. It is uncontested that A5D is shorthand for the chemical compound A5D, aminopurinyl-5-enzyldisulfanylmetholtetrahydrdofurandiol, a chemical completely distinct from plaintiff's polyaspartate product A-5D. But even assuming plaintiff has established 20 years of exclusive and continuous use of A-5D, that alone does not establish secondary meaning and is, at most, *prima facie* evidence of distinctiveness. Plaintiff concedes it has no survey evidence or direct consumer testimony and that, for all its products, it has spent less than $20,000 in advertising for more than $47,000,000 in sales. The consumers in this market are purchasers of complex chemical products and unlikely to be confused as to product origin.

It is uncontested that, while he still owned Donlar, Koskan created the labels for various grades of Donlar polyaspartate products including A-5D. The first letter refers to the manufacturing method ("A"), the molecular weight is 5,000 ("5"), and the last letter ("D") refers to the hydrolysis process for converting

---

³In the early 1990's, defendant Koskan founded Donlar Corporation which owned certain patents, including those at issue in this case, and sold A-5D among other polyaspartate products. In 2004, Donlar went into bankruptcy and its assets were purchased by a company that formed NC. NC thereafter sold A-5D while Koskan went on to found GGP.

the dry product to a liquid. The hyphen is arbitrarily placed. A-5D refers to the product being produced with a Krauss Maffei reactor, with a molecular weight of 5000, and using normal hydrolysis. A means of distinguishing the molecular weight of the "A" series products is to look at the number: A-2C has a molecular weight of 2,000; A-5D is 5,000. NC's A series products contain the same designations and molecular weight as were sold by Donlar. Thus, A-5D is a descriptive label, not a distinctive mark. *See **Ideal Indus., Inc. v. Gardner Bender, Inc.**, 612 F.2d 1018, 1022-23 (7th Cir. 1979); **Schering Corp. v. Bausch & Lomb Inc.**, 698 F.2d 862, 865 (7th Cir. 1983); **Dwyer Instruments, Inc. v. Sensocon, Inc.**, 873 F. Supp. 2d 1015, 1038 (N.D. Ind. 2012); 2 McCarthy on Trademarks & Unfair Competition*, §§ 11:37, 11:39 (4th ed.).

As previously indicated, plaintiff has not provided evidence supporting that A-5D has secondary meaning. Therefore, plaintiff cannot succeed on its reverse passing off claims. Counts VI and VII will be dismissed.

The parties shall promptly meet and make a concerted effort to settle the remaining issues in this case. Absent a resolution by settlement, the final pretrial order is due on the date set forth below. The pretrial order is to be filed

electronically with a paper judge's copy brought to court on the date set forth below.

IT IS THEREFORE ORDERED AS FOLLOWS:

Defendants' motion *in limine* to bar damage evidence [192] is granted in part and denied in part. Plaintiff's damages are limited to lost profits.

Plaintiff's motion for summary judgment [186] is denied. Defendants' cross motion for summary judgment [195] is granted. Counts VI and VII of the Second Amended Complaint are dismissed.

On October 17, 2013 at 2:00 p.m., the parties shall submit a judge's copy of a final pretrial order in full compliance with Local Rule 16.1 and Local Rule Form 16.1.1, including trial briefs, proposed voir dire questions, motions in limine with supporting briefs, and proposed jury instructions.

ENTER:

*[signature: William T. Hart]*
UNITED STATES DISTRICT JUDGE

DATED: SEPTEMBER 10, 2013